```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

<u>Cynthia Hudson</u>

    v.                                Civil No. 11-cv-90-JL

<u>Town of Weare et al.</u>

**SUMMARY ORDER**

This civil rights action arises out of a traffic stop that plaintiff Cynthia Hudson says should never have been made. Hudson contends that while driving home from a friend's house on the night of the stop, she was observing all traffic laws and driving in an unremarkable manner. Nonetheless, she was stopped, and, after submitting to roadside sobriety tests, arrested and charged with driving while impaired--a charge that was later dismissed after her blood tested negative for drugs or alcohol.

Hudson has now filed suit against the officer who stopped and arrested her, his supervisor, the phlebotomist who drew her blood, and the Town of Weare and its police chief, asserting a claims for alleged violations of her Fourth Amendment rights, <u>see</u> 42 U.S.C. § 1983, as well as common-law claims for battery, intentional infliction of emotional distress, false arrest, and malicious prosecution.[1] The defendants have moved for summary judgment, <u>see</u> Fed. R. Civ. P. 56, on all of Hudson's claims.

---

[1] Hudson also sued the defendants for assault, negligent infliction of emotional distress, and violation of her state constitutional rights, but has conceded that summary judgment for defendants is appropriate on these claims.

This court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction), and heard oral argument on the defendants' motion on November 15, 2012.  As the court discussed at the hearing, the motion is granted in part and denied in part.

## I.   Traffic stop

There is a stark factual dispute in this case:  defendant Daniel Aiken, the officer who stopped and arrested Hudson, says that, before stopping her, he observed Hudson driving at 62 miles per hour--in excess of the posted 50 mile-per-hour speed limit-- weaving within her lane, drifting out of her lane, and driving onto the shoulder.  Hudson, however, steadfastly denies doing any of those things, and says that all she did before Aiken stopped her was slow down as she approached an area where the speed limit dropped to 30 miles per hour, signal a right-hand turn, turn her signal off without turning, and travel another quarter mile down the road before reactivating her signal and turning.

The facts must, of course, be viewed "in the light most favorable to" Hudson for purposes of summary judgment.  Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).  Doing so here, the court cannot conclude that Aiken's stop of Hudson was constitutional.  "A traffic stop is constitutional if an officer has reasonable suspicion of unlawful conduct involving a motor vehicle or its operation," United States v. Jenkins, 680 F.3d

2

101, 104 (1st Cir. 2012), i.e., "a particularized and objective basis for suspecting the person stopped of criminal activity, rooted firmly in specific and articulable facts," United States v. Brake, 666 F.3d 800, 804 (1st Cir. 2011). In this case, one could not reasonably draw the conclusion that Hudson was engaged in unlawful activity from the fact that she activated her turn signal and then shut it off shortly thereafter without turning, only to ultimately activate that signal again less than 500 yards later and turn. Indeed, under these circumstances, the presence of reasonable suspicion is not even "arguable." See Eldredge v. Town of Falmouth, 662 F.3d 100, 106 (1st Cir. 2011). Because it has been settled law since the 1970's that a police officer may not initiate an investigatory stop of a motorist without reasonable suspicion, see, e.g., Delaware v. Prouse, 440 U.S. 648, 663 (1977), Aiken is not entitled to qualified immunity from Hudson's 42 U.S.C. § 1983 claim, at least insofar as that claim arises from the traffic stop. Moreover, because the stop was performed "without legal authority," the court cannot grant summary judgment in his favor on Hudson's state-law false arrest claim. See MacKenzie v. Linehan, 158 N.H. 476, 482 (2009) (claim for false arrest lies where defendant unlawfully restrains an individual's personal freedom).[2]

---

[2]The Town of Weare and its police chief, Gregory Begin--who has been sued in his official capacity--have not argued that they cannot be held liable for Aiken's constitutional violation under

## II. **Arrest and prosecution**

Summary judgment is granted to defendants on the remaining claims. To the extent that Hudson claims that Aiken violated her constitutional rights by arresting and charging her without probable cause, the undisputed facts support the opposite conclusion. "Probable cause exists when reasonably prudent police officers, under the facts and circumstances, would believe the defendant had committed or was about to commit a crime." United States v. Gonzalez, 609 F.3d 13, 19 (1st Cir. 2010). At the time he arrested Hudson, Aiken had observed several things--undisputed by Hudson--that, in conjunction, justified a belief that she had committed a crime by driving while under the influence of some controlled substance:

- she gave him a Visa debit card instead of her license;

---

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), because Hudson cannot show that Aiken acted pursuant to a policy or custom of the Weare police department. Hudson's constitutional claim may therefore proceed against those defendants as well.

Those two defendants are, however, entitled to immunity from Hudson's false arrest claim under N.H. Rev. Stat. Ann. § 507-B:5, which provides that "[n]o governmental unit shall be held liable in any action to recover for . . . personal injury," including false arrest. See id. § 507-B:1, III(a). But section 507-B:5's immunity does not extend to Aiken, who, if he in fact violated Hudson's clearly established constitutional rights, cannot be said to have been acting in good faith--which is a prerequisite to his entitlement to that immunity. See id. § 507-B:4. For the same reason, Aiken is not entitled to common-law official immunity from Hudson's false arrest claim. See, e.g., Mlodzinski v. Lewis, 648 F.3d 24, 39 (1st Cir. 2011).

- she was slurring her speech;

- her eyelids were droopy and her pupils constricted;

- while walking to the sobriety test area, her steps were halting and her coordination poor;

- during the horizontal gaze nystagmus test, she "nodded off" and her body swayed noticeably;

- while Aiken was instructing her how to perform the walk-and-turn test, she held out her arms "airplane fashion" for balance and fell out of the "Instructional Position" twice;

- she missed heel-to-toe on every step in the walk-and-turn test, stepped off the line five times, and again used her arms for balance; and

- she swayed side to side more than six inches during the one leg stand test, used her arms for balance, and hopped three times to maintain balance.

Nothing that happened between the time of the arrest and Aiken's filing of charges against Hudson meaningfully undermined the existence of probable cause.[3]  Summary judgment is therefore appropriate on Hudson's state-law claim for malicious prosecution, of which the lack of probable cause is an essential element, see Stock v. Byers, 120 N.H. 844, 846 (1980), as well as her constitutional claims premised on her arrest and prosecution.

III. **Blood draws**

Hudson has also advanced two claims arising out of the blood draws that were performed after her arrest:  a constitutional

---

[3]While it is true that Hudson passed both a breath test and urine test in this time period, that does not necessarily rule out her impairment by a controlled substance that could not be detected by either test.

claim for excessive force and a state-law battery claim. Summary judgment is granted to defendants on both these claims. The undisputed facts establish that Hudson not only consented to the blood draws, but affirmatively requested them. An excessive force claim only lies where the defendant "employed force that was unreasonable under the circumstances," Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010), and it was anything but unreasonable for the defendants to perform a minimally intrusive medical procedure at the plaintiff's own request in the course of her detention. Similarly, "[t]he plaintiff's consent to the contact with his person will prevent liability for a battery." Bazazi v. Michaud, 856 F. Supp. 33, 35 (D.N.H. 1994) (quoting 6 Am. Jur. 2d Assault and Battery § 155 (Supp. 1994)).

## IV.  Intentional infliction of emotional distress

Finally, summary judgment is granted to defendants on Hudson's claim for intentional infliction of emotional distress. Liability for that tort lies "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Tessier v. Rockefeller, 162 N.H. 324, 341 (2011). Whatever else might be said about defendants' conduct, it does not come close to meeting this high bar. Cf. Banks v. Hall, No. 10-cv-269-JL, 2012 WL 3263607, at *2 (D.N.H. Aug. 9, 2012) (summary judgment

granted to defendants on intentional infliction claim where they allegedly loosed dog on, tasered, and kicked plaintiff).

## V. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment[4] is DENIED as to Hudson's 42 U.S.C. § 1983 claims against Aiken, the Town of Weare, and the Town's police chief, but only insofar as those claims arise out of the initial traffic stop.  The motion is also DENIED as to Hudson's state-law claim against Aiken for false arrest[5], but is GRANTED as to all other claims.

As this court recently admonished plaintiff's counsel in another case, Local Rule 7.1(a)(3) limits the length of memoranda in opposition to dispositive motions to 25 pages.  Dennis v. Town of Loudon, 2012 DNH 165, 27-28.  At a hefty 34 pages, plaintiff's memorandum violates the rule.  Because that memorandum was filed

---

[4] Document no. 19.

[5] Defendants have argued that Hudson's complaint does not satisfy Rule 8's pleading standard as to the false arrest claim. The court doubts that a motion for summary judgment--which tests whether the evidence supports a plaintiff's allegations, not whether the plaintiff has properly pleaded those allegations--is the proper vehicle for making this argument.  See, e.g., Sherman v. Rinchem Co., Inc., No. 10-cv-2062, 2011 WL 3471057, at *7 (D. Minn. Aug. 8, 2011) ("The proper vehicle for challenging a complaint as insufficiently specific is a Rule 12 motion filed shortly after the complaint is served, not a Rule 56 motion filed months later at the close of discovery.").  Even assuming, though, that defendants may challenge the complaint at this late date, Hudson's allegations--though admittedly sparse--plead enough factual content to satisfy Rule 8.

before this court issued its order in Dennis, the court will take no remedial action, but counsel are again reminded that future noncompliance may be met with sanctions. See L.R. 1.3(a).

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: November 16, 2012

cc: Michael J. Sheehan, Esq.
　　Nicholas Brodich, Esq.
　　Charles P. Bauer, Esq.